# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

March 22, 2018

**BY ECF**

Hon. Lorna G. Schofield, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     *Re:* *Cambron v. Carnhill Inc., et al.*
       <u>Case No. 17-CV-5909 (LGS) (GWG)</u>

Dear Judge Schofield,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached by the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

    ***I.*** ***The Need for the Court's Approval of the Agreement***

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Lorna G. Schofield, U.S.D.J.
March 22, 2018
Page 2

## II.   *Plaintiff's Claims for Unpaid Wages*

Plaintiff commenced this action on August 4, 2017, asserting causes of action for, *inter alia*, unpaid minimum wages and overtime compensation pursuant to the FLSA and New York Labor Law. Plaintiff alleges that he was hired in or about November 2010 to work as a car wash attendant and automobile detailer for the defendants' car wash business. Plaintiff worked continuously for the defendants until in or about March 2017.

Plaintiff alleges that throughout the entirety of his employment he typically worked 6 days per week, with a work shift of 10 hours per day from 8:00 a.m. until 6:00 p.m., and sometimes in excess thereof. Thus, he contends typically working 60 hours per week, and sometimes more.

With respect to his pay, plaintiff alleges that he was paid:

- August 2011 (start of the limitations period) – November 2014: $6 per hour
- December 2014 – March 2017: $9 per hour

Plaintiff originally calculated that he is owed approximately $39,000 in underlying unpaid wages, with an equal amount in liquidated damages, plus another $10,000 in statutory damages for defendants' alleged failure to provide proper wage notices and wage statements.

## III.   *Defendants' Discovery Material and the Disputed of Facts*

Defendants dispute certain alleged facts – most importantly, the number of hours the plaintiff alleges to have worked and the hourly rates paid to plaintiff. According to the defendants' wage and hour records, plaintiff's work hours fluctuated each week, with many weeks where plaintiff did not work in excess of 40 hours. Although there were many weeks where plaintiff did work more than 40 hours, taken as a whole, plaintiff's average workweek consisted of approximately 45 hours per week.

Additionally, the defendants' records show that plaintiff was paid $8 per hour in 2013, and $9 per hour starting in April 2013, thereby extinguishing any minimum wage claims after 2013 (except for a few months in 2017).

## IV.   *Revised Estimated Damages*

Upon analyzing the defendants' wage and hour records, plaintiff's damages were re-calculated at approximately $7,300 in underlying unpaid wages, with an equal amount in liquidated damages.

Hon. Lorna G. Schofield, U.S.D.J.
March 22, 2018
Page 3

## V.     The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $18,500 to resolve plaintiff's wage and hour claims against the defendants, payable in a lump sum within 10 days of the Court's approval of the Agreement as fair and reasonable and dismissal of the Complaint with prejudice. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

## VI.    The Agreement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.,* No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra,* 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.,* No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013). In light of the various disputes concerning plaintiff's claims (as discussed above) and the defendants' financial viability, this settlement should be approved.

In addition to the disputed facts discussed above, another trepidation that brought the parties toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Howard v. Don Coleman Advert. Inc.,* No. 16 Civ. 5060, 2017 WL 773695, at *1 (S.D.N.Y. Feb. 28, 2017) (finding that a plaintiff's "serious concerns about collectability...'militates in favor of finding a settlement reasonable'"); *see also Larrea v. FPC Coffees Realty Co., Inc.,* No. 15 Civ. 1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (same). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood car wash with limited financial resources. The Agreement significantly decreases the risk of collection by permitting a reasonable settlement amount to be paid immediately upon approval.

Hon. Lorna G. Schofield, U.S.D.J.
March 22, 2018
Page 4

Finally, it is the defendants' position that the corporation does not meet the FLSA's $500,000 doing business threshold. Extensive discovery would have been required and, although plaintiff is confident that he would have survived a summary judgment on that issue, it would have led to a prolonged period of litigation and expenses.

By settling now, plaintiff receives more than his calculated unpaid wages, as well as some liquidated damages, even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, he made the decision to accept the defendants' offer.

### VII.    *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after our initial $500 in costs (filing fee and service of process) is deducted. Therefore, plaintiff's counsel seeks $6,000 in fees, plus $500 in costs for a total of $6,500, which is less than the firm's lodestar. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour) have previously been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016). Counsel has spent well above 16 hours litigating this case.

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Wayne Kreger, Esq. (by ECF)